1 **CARRIE E. HURTIK, ESQ.**
Nevada Bar No. 7028
2 **RACHEL L. SHELSTAD, ESQ.**
Nevada Bar No. 13399
3 **RACHEL A. SLOANE, ESQ.**
Nevada Bar No. 14120
4 **HURTIK LAW & ASSOCIATES**
7866 West Sahara Avenue
5 Las Vegas, Nevada  89117
(702) 966-5200 Telephone
6 (702) 966-5206 Facsimile
churtik@hurtiklaw.com
7 rshelstad@hurtiklaw.com
rsloane@hurtiklaw.com
8 Attorneys for Plaintiff,
KIETH C. SHELSTAD
9

**UNITED STATES DISTRICT COURT**

10 **DISTRICT OF NEVADA**

11

12 KIETH C. SHELSTAD, an individual,

CASE No.:

13            Plaintiff,

14 vs.

15

16 TGS AVIATION SERVICES, INC., a
domestic corporation, UNITED AIRLINES,
INC., a foreign Corporation; DOES 1 – 20;
17 ROE ENTITIES 1- 20,

18            Defendants.

19

20 <u>**COMPLAINT**</u>

21 <u>**DEMAND FOR JURY TRIAL**</u>

22        COMES NOW, Plaintiff, KIETH C. SHELSTAD (hereinafter "Plaintiff"), by and through his

23 attorneys of record, CARRIE E. HURTIK, ESQ., RACHEL L. SHELSTAD, ESQ., and RACHEL A.

24 SLOANE, ESQ., of the law firm HURTIK LAW & ASSOCIATES, and for his causes of action against

25 Defendants, TGS AVIATION SERVICES, INC., and UNITED AIRLINES, INC. (hereinafter

26 collectively referred to as, "Defendants"), and each of them, and Plaintiff hereby complains, alleges and

27 states as follows:

28

**NATURE OF ACTION**

1.     This action is brought pursuant to the Americans With Disabilities Act and the ADA Amendments Act (collectively referred to as "ADA"), seeking damages for the unlawful discrimination and wrongful termination which Plaintiff was subjected to in the course of his employment with Defendants and in connection with Defendants' failure and refusal to engage in the interactive process with him and failure and refusal to reasonably accommodate Plaintiff's disability in violation of the ADA.

2.     This action is also brought pursuant to the Age Discrimination in Employment Act ("ADEA"), and other state tort claims, seeking damages for the unlawful employment discrimination and retaliation on the basis of age which Plaintiff was subjected to in the course of his employment with Defendants, and in in connection with his discharge from employment by Defendants in violation of ADEA.

**JURISDICTION AND VENUE**

3.     The Court has jurisdiction over the lawsuit as the same arises under the ADA, 42 U.S.C. § 2000e-5.  This Court also has jurisdiction over this lawsuit as the same arises in part under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

4.     Plaintiff timely filed his Charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 26, 2015.  On August 18, 2016, the EEOC issued Plaintiff two Notices of Right to Sue respective Defendants, TGS AVIATION SERVICES, INC., and UNITED AIRLINES, INC., upon Plaintiff's request.  Plaintiff has filed this lawsuit within ninety (90) days from receiving the Notices of Right to Sue. (See Exhibit "1" and "2" attached hereto and incorporated herein by reference).

5.     The unlawful employment practices alleged below were committed within the jurisdiction of this Court, the United States District Court for the District of Nevada, within Clark County, State of Nevada.

/ / /

/ / /

/ / /

**PARTIES**

6.     Plaintiff is a resident of Clark County, State of Nevada. At the time of Defendants' retaliatory and discriminatory termination of Plaintiff's employment, Plaintiff was sixty-one (61) years of age.

7.     Plaintiff is a qualified individual with a disability pursuant to the ADA. The primary disability being impairment related to a stroke suffered by Plaintiff.

8.     Plaintiff has a limited impairment as a result of the stroke which directly impacted several major life activities – walking, lifting, standing, and bending.  As a baggage porter, Plaintiff was required to lift, stand, walk, and bend during the scope of his employment.

9.     Plaintiff's physical impairments qualify as a disability for ADA purpose, and Plaintiff is disabled within the meaning of the statute.

10.     Plaintiff, at all material times hereto, was able to perform the essential functions of his job with reasonable accommodation.

11.     Defendant, UNITED AIRLINES, INC., is now, and at the time of the events complained of herein was, a foreign corporation operating and doing business in Nevada, with its principal place of business in Chicago, Illinois.

12.     Defendant, UNITED AIRLINES, INC. has continuously had and, upon information and belief, does now have at least fifteen (15) employees and is an "employer" within the meaning of that term as defined by the ADA.

13.     Defendant, TGS AVIATION SERVICES, INC. is and at the time of the events complained of herein was, a Nevada corporation operating and doing business in Nevada with its principal place of business in Las Vegas, Nevada.  Upon information and belief Defendant, TGS AVIATION SERVICES, INC., was also doing business as "The Greatest Skycap, Inc."

14.     Defendant, TGS AVIATION SERVICES, INC. has continuously had and, upon information and belief, does now have at least fifteen (15) employees and is an "employer" within the meaning of that term as defined by the ADA.

15.     Defendant, TGS AVIATION SERVICES, INC. is owned and operated by Steven C. Burdick.  Upon information and believe, Steven C. Burdick is the responsible party for the managing and operating Defendant, TGS AVIATION SERVICES, INC.

16.     Upon information and belief, at all relevant times, Defendant, TGS AVIATION SERVICES, INC. was the partner, joint venture, alter-ego, successor company, agent, co-conspirator, servant, and employee of Defendant, UNITED AIRLINES, INC., and was acting at all relevant times within the scope, purpose and authority of said partnership, joint venture, agency, service, employment, and conspiracy, and with the knowledge, consent, permission, acquiescence, and ratification of Defendant, UNITED AIRLINES, INC.

17.     Upon information and belief, at all relevant times, Defendant, UNITED AIRLINES, INC., was the partner, joint venture, alter-ego, successor company, agent, co-conspirator, servant, and employee of Defendant, TGS AVIATION SERVICES, INC., and was acting at all relevant times within the scope, purpose and authority of said partnership, joint venture, agency, service, employment, and conspiracy, and with the knowledge, consent, permission, acquiescence, and ratification of Defendant, TGS AVIATION SERVICES, INC.

18.     The true names or capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1-20 and ROES 1-20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE or ROE are responsible in some manner for the events and happenings herein referred to and caused injury and damages proximate hereto to the Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of Defendants DOES 1-20 and ROES 1-20, inclusive, when same have been ascertained by Plaintiff, together with appropriate charging allegations, and to join such Plaintiff in this action.

## STATEMENT OF FACTS

19.     Upon information and belief, Defendant, TGS AVIATION SERVICES, INC. provides the following services, including without limitation: cleaning of interior aircrafts, baggage delivery, group deliver, ticket assistance, sky cap services, and facility maintenance.  The services listed herein

1   were primarily performed at McCarran International Airport (hereinafter "McCarran Airport"), located

2   at 5757 Wayne Newton Boulevard, Las Vegas, Nevada 89119.

3        20.    Defendant, UNITED AIRLINES, INC. operates at Terminal 3 of the McCarran Airport

4   including ticketing and baggage claim services (Sky Cap services).

5        21.    The term "Sky Cap" refers to an individual whose duties includes: checking in airline

6   passengers for departing flights, checking baggage for passengers, and transferring passengers' baggage

7   onto a conveyor belt, which was built for purpose of loading passengers' baggage onto departing airline

8   flights.

9        22.    Defendant, TGS AVIATION SERVICES, INC., contracts with major airlines, including

10   Defendant, UNITED AIRLINES, INC. to provide Sky Cap services.

11        23.    Upon information and belief, and during all relevant times herein, Defendant, TGS

12   AVIATION SERVICES, INC. entered into an agreement with Defendant, UNITED AIRLINES, INC.

13   to provide sky cap services at Terminal 3.

14        24.    Plaintiff began his employment with Defendant, TGS AVIATION SERVICES, INC. in

15   1996.

16        25.    Plaintiff was a dedicated and competent Sky Cap who received numerous compliments

17   from passengers of Defendant, UNITED AIRLINES, INC.

18        26.    At all material times hereto, Plaintiff was one of the oldest, if not the oldest, Sky Cap for

19   Defendant, TGS AVIATION SERVICES, INC. as it pertains to the services performed for Defendant,

20   UNITED AIRLINES, INC.

21        27.    Upon information and belief, Defendant, TGS AVIATION SERVICES, INC. had

22   contracts with other airlines, including: Allegiant, U.S. Airways, Alaska, and Continental.

23        28.    Defendant, TGS AVIATION SERVICES, INC. assigned Plaintiff to work shifts that

24   were performed solely at Terminal 3 of the McCarran Airport for Defendant, UNITED AIRLINES, INC.

25        29.    Mr. Steve C. Burdick had a policy of hiring family members and friends for positions

26   with Defendant, TGS AVIATION SERVICES, INC.

27        30.    Regardless of experience, Mr. Steve C. Burdick would promote and assign desired shifts

28   to friends and family.  This created a disadvantage for dedicated employees such as Plaintiff.

31.     Plaintiff's work environment at Terminal 3 was satisfactory until Plaintiff was assigned to a supervisor named Jeremy Strong.  Mr. Jeremy Strong was a friend of Mr. Burdick's family, and displayed an unprofessional bias towards older Sky Caps who were employed by Defendant, TGS AVIATION SERVICES, INC.

32.     In January, 2013, Plaintiff suffered a stroke during his work shift at Terminal 3.  Rather than contact medical personnel, Mr. Strong, the assigned supervisor for Plaintiff's work shift, accused Plaintiff of being intoxicated and instructed him to go home.  Mr. Strong failed to assess Plaintiff's physical well-being, need for medical intervention, or Plaintiff's ability to safely drive home.  Mr. Strong exhibited a biased attitude of disrespect for Plaintiff due to his older age.

33.     Plaintiff partially recovered from the impairments caused by the stroke and delay of medical treatment, and returned to his position as a Sky Cap at Terminal 3 in February of 2013.

34.     As a direct result of Plaintiff's stroke, and Mr. Strong's stance on older employees, Plaintiff sustained substantial limited impairment which directly impacted several major life activities – walking, lifting, standing, and bending.  As a Sky Cap, Plaintiff was required to lift, stand, walk, and bend during the scope of his employment.

35.     After returning to his employment in February of 2013, Mr. Jeremy Strong exhibited a biased attitude of disrespect for Plaintiff due to his older age and disability.  It was this general bias which Mr. Jeremy Strong and Mr. Steve C. Burdick used to collaborate their unjustified termination of Plaintiff's employment on November 13, 2014.

36.     Plaintiff did return to work after his stroke, but was met with limitations in moving baggage long distances.   Plaintiff required additional time to transfer baggage long distances.

37.     Plaintiff was, at all times material hereto, able to perform the essential functions of his job with reasonable accommodation by a swamper. A swamper is an individual employed by Defendant, TGS AVIATION SERVICES, INC., and is tasked solely with transferring baggage for Sky Caps. Defendant, TGS AVIATION SERVICES, INC. did away with a swamper position in order to save costs.

38.     Although Plaintiff requested the assistance of a swamper, Plaintiff was required to lift, stand, walk, and bend during the scope of his employment in the same manner as before his stroke.

39.     Plaintiff was not accommodated by Defendant, TGS AVIATION SERVICES, INC., and was assigned less desirable work shifts, and assigned less than forty (40) hours per week.

40.     Upon information and belief, for approximately a year from February, 2013, Defendant, TGS AVIATION SERVICES, INC. reduced Plaintiff's work shifts in order in order to avoid the new requirements of the Health Care Act.  The majority of the employees at Defendant, TGS AVIATION SERVICES, INC. aged over fifty (50) received reduced work shifts so that Defendant, TGS AVIATION SERVICES, INC. could avoid paying health care related costs.  All of the work shifts were filled by individuals under the age of fifty (50).

41.     The age based harassment, discrimination and retaliation which Plaintiff was subjected to consisted of disparate conduct by another member of Mr. Steve C. Burdick's family, Brad Burdick. Mr. Brad Burdick is Mr. Steve C. Burdick's nephew and would purposefully and intentionally interfere with Plaintiff's work shifts.

42.     Upon information and belief, Mr. Brad Burdick bullied, intimidated, and singled out employees of Defendant, TGS AVIATION SERVICES, INC., in order to receive payouts for assignment of favorable shifts.

43.     Upon information and belief, Mr. Brad Burdick would assign a favorable shift to younger impressionable employees, who would in turn pay Mr. Brad Burdick part of the tips received during the work shift.

44.     Mr. Brad Burdick knew that Plaintiff would not participate in this unethical and unprofessional arrangement, and as a result Plaintiff lost his Saturday work shift to a younger impressionable employee, Alex Massi.

45.     Plaintiff is a mature individual who had life experience and knowledge, which would not allow him to be intimated to pay Mr. Brad Burdick for more favorable work shifts.

46.     Thereafter, members of the Mr. Steve Burdick's family, who were employed by Defendant, TGS AVIATION SERVICES, INC. collaborated to terminate Plaintiff's employment due to his age and impairment from the stroke.

47.     Despite the less desirable work shifts, Plaintiff continued to work for Defendant, TGS AVIATION SERVICES, INC., until Defendant, TGS AVIATION SERVICES, INC., lost a major contract with Allegiant Airlines.

48.     Prior to May of 2014, Mr. Burdick employed his daughter, Heidi Scott as a Sky Cap for Allegiant Airlines.  Ms. Scott was assigned desirable work shifts at Allegiant Airlines, despite her lack of professionalism and experience.

49.     Upon information and belief, Ms. Scott made disparaging comments regarding Plaintiff's age and disability. Ms. Scott displayed an unprofessional bias towards older and disabled Sky Caps such as Plaintiff.

50.     Upon information and belief, on or about September of 2014, Defendant, TGS AVIATION SERVICES, INC., lost a major contract with Allegiant Airlines because Ms. Scott's unprofessionalism and conduct towards a higher level employee of Allegiant Airlines.  Ms. Scott lost all of her shifts at Allegiant Airlines, along with all other employees of Defendant, TGS AVIATION SERVICES, INC., who worked as Sky Caps.

51.     The age based harassment, discrimination and retaliation which Plaintiff was subjected to, consisted of disparate discipline directed towards Plaintiff, including but not limited to, the following: on October 11, 2014, Mr. Steven Burdick, without cause, suspended Plaintiff for two (2) weeks for allegedly placing priority bag tags (allegedly a $50 value/per bag) on a the baggage of a UNITED AIRLINES, INC.'S passenger.

52.     It was routine practice of Defendant, UNITED AIRLINES, INC. that passengers with "Elite Status" were not charged for priority bag tags.

53.     Plaintiff denied all of Mr. Steve C. Burdick's accusations because the UNITED AIRLINES, INC.'S passenger showed Plaintiff an airline card evidencing "Elite Status," which warranted such a travel upgrade.

54.     Regardless, if there was an infraction, suspension was not warranted.  There is a clear pattern of age discrimination by Defendant, TGS AVIATION SERVICES, INC., because younger employees of Defendant, TGS AVIATION SERVICES, INC. committed the same alleged infraction, and were not disciplined.

55.    Plaintiff was punished for placing the priority bag tag, when no younger employee or employee under forty (40) years of age was punished for the same conduct.

56.    Plaintiff knew that Defendant, TGS AVIATION SERVICES, INC.'S employees, under the age of forty (40) years, did the same thing and did not receive discipline for it.

57.    During Plaintiff's two (2) week suspension, Plaintiff was informed that he was suspended in order for younger employees to receive Plaintiff's work shifts.

58.    Upon returning to work after Plaintiff's unjustified two (2) week suspension, Plaintiff was targeted by Mr. Steven C. Burdick and Mr. Jeremy Strong.

59.    Plaintiff was scrutinized more harshly than other employees, outside his protected class, during the performance of his employment duties.

60.    On November 10, 2014, a UNITED AIRLINES, INC.'S passenger, Mr. Robert Rosenblatt, presented a travel card evidencing an "Elite Status" to Plaintiff, which entitled Mr. Robert Rosenblatt to a priority bag tag.  Mr. Rosenblatt tipped Plaintiff Ten Dollars and Zero Cents ($10.00), and the matter was without incident.

61.    Tipping Sky Caps is a common practice, and is permitted.

62.    Defendant, TGS AVIATION SERVICES, INC.'S and Defendant, UNITED AIRLINES, INC.'S supervisor, Jeremy Strong was aware of this standard practice and Plaintiff performed his duties as trained.

63.    Mr. Strong, without cause, alleged that Mr. Rosenblatt was not entitled to the priority bag tag, and falsely accused Plaintiff of accepting compensation for services he was not authorized to perform.

64.    Plaintiff did not solicit proceeds from a UNITED AIRLINES, INC.'S passenger, which was contrary to Defendant, TGS AVIATION SERVICES, INC.'S policies.

65.    On November 13, 2014, Steve C. Burdick, refused to allow Plaintiff to have legal counsel present during a meeting involving Plaintiff's employment, and the alleged incident on November 10, 2014.

66.     During the meeting, Mr. Steve C. Burdick attempted to **bully and force** Plaintiff into signing a **dishonest** account of facts which was titled "EMPLOYEE WARNING NOTICE," and which stated in pertinent part:

> ON NOVEMBER 10, 2014 YOU KNOWINGLY PLACED A PRIORITY TAG ON A PAX ROBERT TODD ROSENBLATT (SIC) BAG AFTER ACCEPTING A $10.00 TIP FOR THAT SERVICE. PAX ROSENBLATT WAS NOT ENTITLED TO A PRIORITY TAG – YOU ACCEPTED PAYMENT FOR PROVING <u>A SERVICE YOU WERE NOT AUTHORIZED TO PERFORM</u>. <u>**UAL**</u>[1] HAS REQUESTED YOU BE REMOVED FROM PROVIDING SERVICE TO ANY OF THEIR CUSTOMERS.

See Exhibit "3" – Employee Warning Notice.

67.     Plaintiff refused to sign the "EMPLOYEE WARNING NOTICE," and thereafter, he was discharged at the direction of Defendants, UNITED AIRLINES, INC. and TGS AVIATION SERVICES, INC.

68.     The "EMPLOYEE WARNING NOTICE" clearly states that Plaintiff was discharged at the direction and authority of Defendant, UNITED AIRLINES, INC.

69.     According to a response to Plaintiff's complaint submitted to the EEOC, Defendant, UNITED AIRLINES, INC., claims that it lacked any records of the November 10, 2014, incident.

70.     According to a response to Plaintiff's complaint submitted to the EEOC, Defendant, TGS AVIATION SERVICES, INC. claimed to have received an electronic mail from Defendant, UNITED AIRLINES, INC. regarding a complaint they received from Mr. Rosenblatt regarding the November 10, 2014, incident.

71.     Defendant, TGS AVIATION SERVICES, INC.'S response to the EEOC complaint is inconsistent with the "EMPLOYEE WARNING NOTICE," which stated that Mr. Strong had alleged that Plaintiff accepted compensation for providing a service he was not authorized to perform.

72.     After Plaintiff was terminated, an employee of Defendant, TGS AVIATION SERVICES, INC.'S informed Plaintiff that Ms. Scott, a younger employee without any known disability, received all of Plaintiff's work shifts, with the exception of one shift.

/ / /

---

[1] UAL is an abbreviation for United Airlines, Inc.

## COUNT 1 - DISCRIMINATION IN VIOLATION OF

## THE AGE DISCRIMINATION IN EMPLOYMENT ACT

### (Against all Defendants)

73.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 72 of Plaintiff's Complaint and incorporates them in this cause of action as though fully set forth herein.

74.    Defendants have engaged in unlawful employment practices in violation of the ADEA by discriminating against Plaintiff based upon his age in the course and scope of his employment, with regard to the terms and conditions of his employment, and by discharging and terminating him from his employment based upon his age.

75.    The effect of Defendants' practices complained of above has been to deprive Plaintiff of equal employment opportunities as set forth previously herein and has otherwise adversely affected Plaintiff because of his age.

76.    As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has sustained and suffered damages within the jurisdiction limits of the this Court for which he seeks recovery pursuant to the ADEA including, but not limited to: (a) lost earnings, wages, earning capacity, seniority, medical, health and other insurance benefits and other employer benefits in the past and into the indefinite future; and (b) costs and attorney fees incurred as a result of being forced to file this suit.

77.    Defendants acted willfully and with malice in engaging in discrimination against Plaintiff based upon his age and, accordingly, Plaintiff is entitled to liquidated damages pursuant to the ADEA.

## COUNT 2 - RETALIATION IN VIOLATION OF

## THE AGE DISCRIMINATION IN EMPLOYMENT ACT

### (Against all Defendants)

78.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 77 of Plaintiff's Complaint and incorporates them in this cause of action as though fully set forth herein.

79. Defendants have engaged in unlawful employment practices in violation of the ADEA by retaliating against Plaintiff based upon his age and by discharging and terminating him from his employment in retaliation for his opposition to discrimination based upon his age.

80. The effect of Defendants' practices complained of above has been to deprive Plaintiff of equal employment opportunities as set forth previously herein and has otherwise adversely affected Plaintiff because of his age.

81. As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has sustained and suffered damages within the jurisdiction limits of the this Court for which he seeks recovery pursuant to the ADEA including, but not limited to: (a) lost earnings, wages, earning capacity, seniority, medical, health and other insurance benefits and other employer benefits in the past and into the indefinite future; and (b) costs and attorney fees incurred as a result of being forced to file this suit.

82. Defendants acted willfully and with malice in engaging in discrimination against Plaintiff based upon his age and, accordingly, Plaintiff is entitled to liquidated damages pursuant to the ADEA.

## COUNT 3 - DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
### (Against all Defendants)

83. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 82 of Plaintiff's Complaint and incorporates them in this cause of action as though fully set forth herein.

84. Defendants wrongfully engaged in unlawful employment practices in violation of the Americans With Disabilities Act by failing and/or refusing to engage in the interactive process with Plaintiff, discriminating against Plaintiff because of his disability by assigning less desirable work shifts, discharging Plaintiff from his employment.

85. As a direct and proximate result of Defendants' discrimination against Plaintiff, Plaintiff sustained and suffered damages within the jurisdictional limits of this Court for which he seeks recovery pursuant to the ADA including, but not limited to: (a) lost earnings, wages, earning capacity, and other employer benefits; (b) mental and emotional distress, anguish, pain, anxiety and loss of enjoyment of life in the past and into the indefinite future; (c) physical pain and suffering in the past and into the

indefinite future; (d) medical costs and expenses; and (e) costs and attorney fees incurred as a result of being forced to file this lawsuit; and (f) costs and attorney fees incurred as a result of being forced to file this suit.

86.     Defendants acted with malice and/or with reckless indifference to the federally protected rights of Plaintiff by failing and refusing to engage in the interactive process with Plaintiff, by failing and refusing to reasonably accommodate Plaintiff's disability, by engaging in discrimination against Plaintiff as set forth previously herein and, accordingly, Plaintiff is entitled to punitive damages pursuant to the ADA.

## COUNT 4 - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against all Defendants)

87.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 86 of Plaintiff's Complaint and incorporates them in this cause of action as though fully set forth herein.

88.     Defendants acted intentionally and/or recklessly in engaging and/or allowing conduct set forth herein.

89.     Defendants intended to cause Plaintiff severe emotional distress and/or acted with reckless indifference to the fact that their conduct was certain to cause Plaintiff severe emotional distress.

90.     Defendants' actions and conduct as set forth herein were extreme and outrageous so as to go beyond all possible bounds of decency in a civilized community, and Defendants actions caused Plaintiff to suffer severe emotional distress.

91.     As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has sustained damages within the jurisdictional limits of this Court including, but not limited to: (a) lost earnings, wages, earning capacity, seniority, medical, health and other insurance benefits and other employer benefits in the past and into the indefinite future; (b) mental and emotional distress, anguish, pain and anxiety in the past and into the indefinite future; (c) physical pain and suffering in the past and into the indefinite future; (d) medical costs and expenses in the past and into the indefinite future; and (e) costs and attorney fees incurred as a result of being forced to file this suit.

92.     Defendants' conduct engaged in knowingly, willfully and maliciously and was  engaged in with a reckless disregard for Plaintiff's rights and with conscious indifferences to the extreme risk of harm posed to Plaintiff and was intended by the Defendants to be oppressive, malicious or fraudulent to the Plaintiff.

93.     Pursuant to the NRS § 42.005, Plaintiff is entitled to punitive and/or exemplary damages as a result of Defendants' intentional infliction of emotional distress, to punish and/or make an example to others.

WHEREFORE, Plaintiff, KIETH C. SHELSTAD, respectfully prays the Court for the following relief:

1.  For a declaratory judgment that the practices complained of herein are unlawful and violated the ADEA;

2.  For a declaratory judgment that the practices complained of herein are unlawful and violated the ADA;

3.  For back pay from November 10, 2014, to the date of judgment and an additional amount as front pay;

4.  For compensatory damages in an amount within the jurisdictional limits of this Court as well as lost earnings, wages, salary, employment benefits and other compensation and the interest on such sums;

5.  For punitive damages in an amount to be determined to punish and/or make an example of these Defendants;

6.  For liquidated damages pursuant to the ADEA;

7.  For Attorney fees and costs pursuant to the ADEA and ADA;

8.  Plaintiff's medical bills and expenses to be determined;

9.  For Expert fees, if any, incurred by Plaintiff in pursuing this litigation;

/ / /

/ / /

/ / /

/ / /

10.   For costs of suit, including all pre-judgment and post-judgment interest;

11.   For such other and further relief as the court may deem just and proper under the circumstances.

DATED this 21st day of November, 2016.

HURTIK LAW & ASSOCIATES

CARRIE E. HURTIK, ESQ.
Nevada Bar No. 7028
7866 West Sahara Avenue
Las Vegas, Nevada  89117
(702) 966-5200 Telephone
(702) 966-5206 Facsimile
churtik@hurtiklaw.com
Attorneys for Plaintiff,
KIETH C. SHELSTAD

# EXHIBIT "1"

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kieth Shelstad<br>8550 W. Charleston Blvd., Suite 102-295<br>Las Vegas, NV 89117 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 34B-2015-00590 | Karrie L. Maeda,<br>State & Local Coordinator | (213) 894-1100 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** WITHIN 90 DAYS **of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [X] More than 180 days have passed since the filing of this charge.

- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

- [X] The EEOC is terminating its processing of this charge.

- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** WITHIN 90 DAYS **of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*(signature)*

**Rosa M. Viramontes,**
**District Director**

August 18, 2016

*(Date Mailed)*

Enclosures(s)

cc:
| Angela Hartman<br>Office Administrator<br>THE GREATEST SKY CAPS INC.<br>2518 E. Russell Road<br>Las Vegas, NV 89120 | Rachel L. Shelstad, Esq.<br>HURTIK LAW & ASSOCIATES<br>7866 West Sahara Avenue<br>Las Vegas, NV 89117 |
|---|---|

EXHIBIT "2"

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Kieth Shelstad<br>8550 West Charleston Blvd., Suite 102-295<br>Las Vegas, NV 89117 | From: Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative<br>**Karrie L. Maeda,** | Telephone No. |
|---|---|---|
| 34B-2015-00591 | **State & Local Coordinator** | **(213) 894-1100** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*(signature)*

August 18, 2016

Enclosures(s)

**Rosa M. Viramontes,**
**District Director**

*(Date Mailed)*

cc:
Human Resources
UNITED AIRLINES INC.
P.O. Box 06649
Chicago, IL 60606

Elizabeth Bolhouse, Esq.
HURTIK LAW & ASSOCIATES
7866 West Sahara Avenue
Las Vegas, NV 89117

EXHIBIT "3"

**EMPLOYEE WARNING NOTICE**

Name _Kie M Sho___

Date _11/__/__

☐ 1st Notice
☐ 2nd Notice
☑ Final Notice

Dept _____

Clock No _____

| NATURE OF VIOLATION | DETAILED ACCOUNT OF FACTS |
|---|---|
| ☐ Substandard Work Quality | |
| ☐ Safety Violation | |
| ☐ Substandard Productivity | |
| ☐ Lateness/Early Quit | |
| ☐ Unexcused Absence(s) | |
| ☐ Excessive Absences | |
| ☐ Policy Violation | |
| ☐ Carelessness | |
| ☑ Inappropriate Conduct | |

EMPLOYEE REMARKS

I have read this notice and understand it. _____ Employee's Signature

Signature of Foreman or Supervisor _____

Official Signature _____