# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KIETH C. SHELSTAD,

    Plaintiff,

v.

TGS AVIATION SERVICES, INC., a domestic corporation, UNITED AIRLINES, INC., a foreign Corporation; DOES 1-20; ROE ENTITIES 1-20,

    Defendants.

Case No. 2:16-cv-02671-KJD-CWH

**ORDER**

    Presently before the Court is Defendant United Airlines' Motion to Dismiss Complaint (#17). Plaintiff filed a response in opposition (#25) to which Defendant replied (#29). Defendant has also filed a Request for Judicial Notice with the Court (#17).

**I. Background**

    On or about 1996, Kieth C. Shelstad ("Plaintiff") began his employment with Defendant, TGS Aviation Services, Inc. ("TGS") as a Sky Cap. TGS contracts with major airlines to provide Sky Cap services. TGS contracted with Defendant, United Airlines, Inc. ("United") to provide Sky Cap services. Plaintiff worked at Terminal 3 of McCarran International Airport ("McCarran Airport"). Plaintiff was sixty-one years of age when this dispute arose. Plaintiff claims his work environment was satisfactory until he was assigned to a supervisor named Jeremy Strong ("Strong").

According to Plaintiff, Strong was a friend of TGS's owner and operator Mr. Steve C. Burdick ("Burdick") and Burdick had a policy of hiring family members and friends for positions with TGS regardless of experience. Plaintiff believed Strong was biased against older Sky Cap employees.

In January of 2013, Plaintiff suffered a stroke while working at Terminal 3. Strong did not contact medical personnel, accused Plaintiff of being intoxicated, and told him to go home. Plaintiff partially recovered and returned to his position as a Sky Cap at Terminal 3 in February 2013. As a result of the stroke, Plaintiff became limited in major life activities– walking, lifting, standing, and bending, which were required activities during the course of his employment.

The current issue arose when Plaintiff was suspended for two weeks for allegedly placing priority bag tags on the baggage of one of United's passengers. Placement of the priority bag tags was a routine practice that allowed United passengers with "Elite Status" to not be charged for the tag.

After returning to work, Plaintiff alleges that he was scrutinized more harshly than other employees by both Burdick and Strong. For instance, on November 10, 2014, Plaintiff provided a priority bag tag to a United passenger who showed his "Elite Status." He received a $10.00 tip, which was a common practice. On November 13, 2014, Mr. Burdick attempted to force Plaintiff to sign an account of facts with which he did not agree. This statement was titled, "EMPLOYEE WARNING NOTICE," and stated in pertinent part:

> ON NOVEMBER 10, 2014 YOU KNOWINGLY PLACED A PRIORITY TAG ON A PAX ROBERT TODD ROSENBLATT (SIC) BAG AFTER ACCEPTING A $10.00 TIP FOR THAT SERVICE. PAX ROSENBLATT WAS NOT ENTITLED TO A PRIORITY TAG– YOU ACCEPTED PAYMENT FOR PROVING [sic] A SERVICE YOU WERE NOT AUTHORIZED TO PERFORM. U[NITED] A[IR] L[INES] HAS REQUESTED YOU BE REMOVED FROM PROVIDING SERVICE TO ANY OF THEIR CUSTOMERS.

According to Plaintiff, younger employees would go unpunished for the same conduct. Plaintiff refused to sign the notice and was thereafter discharged. Plaintiff then filed suit pursuant to the Americans With Disabilities Act and the ADA Amendments Act (collectively referred to as "ADA"), seeking damages for unlawful discrimination and wrongful termination. Plaintiff also filed suit pursuant to the Age Discrimination in Employment Act ("ADEA"), and alleged other state tort

claims, seeking damages for unlawful employment discrimination and retaliation.

**II. Legal Standard**

    **A. Subject Matter Jurisdiction**

Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts that are sufficient to establish subject matter jurisdiction. In re Dynamic Random Access Memory (DRAM) Antitrust Litigation, 546 F.3d 981, 984-85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)); Righthaven LLC v. Democratic Underground, LLC, 791 F. Supp. 2d 968, 977 (D. Nev. 2011).

Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. See Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

    **B. Failure to State a Claim Upon Which Relief May be Granted**

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

**III. Judicial Notice**

Defendant asks the Court to take judicial notice of (1) the collective bargaining agreement ("CBA") for the Passenger Service Employee craft or class (#17-2); and (2) the National Mediation Board ("NMB") decisions and orders (#17-3) without converting the Motion to one for summary judgment. A court may take judicial notice of any fact not subject to reasonable dispute because it is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). A court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts. Harris v. Cty. of Orange, 682 F.3d 1126, 1131-1132 (9th Cir. 2012).

Courts routinely take judicial notice of a governing collective bargaining agreement where necessary to resolve issues of preemption. See e.g. Tan v. Univ. of CA San Francisco, 2007 WL 963222, at *2 n.1 (N.D. Cal. Mar. 29, 2007). Furthermore, like court proceedings, NMB decisions and orders are subject to judicial notice since there is no reasonable dispute as to their content. Judicial notice may be taken of records and reports of administrative bodies. Interstate Nat'l Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).

Defendant has issued a facial attack, therefore, confining the inquiry to the allegations in the complaint. Also, Defendant has relied upon authority outside the 9th Circuit citing N.Y. Shipping Ass'n v. Waterfront Comm'n of N.Y. Harbor, 2011 WL 1042771, at *2 (D.N.J. Mar. 18, 2011) where the court held that "[i]n a facial attack....[a] court may....consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents." The CBA and the NMB decisions and orders are public records. Furthermore, Plaintiff has rejected the applicability of the CBA, but he has not objected to its accuracy, nor did he address the NMB's decisions and orders. Thus, the Court will take judicial notice of these documents.

**IV. Analysis**

    **A. NMB Jurisdiction**

United is a 'carrier' as defined by § 181 of the Railway Labor Act ("RLA"). Under the RLA, carrier employees are represented in system-wide (nationwide) units called "crafts or classes." 45 U.S.C. § 152, Ninth. The RLA established the NMB and vested it with exclusive jurisdiction over "representation disputes" –questions regarding the selection and identity of representatives for purposes of collective bargaining. Id.; McNamara-Blad v. Ass'n of Prof. Flight Attendants, 275 F.3d 1165, 1170 n.1 (9th Cir. 2002). In exercising its exclusive jurisdiction, the NMB has determined that the Passenger Service Employee craft or class at United consists of those employees who most directly service the customers' immediate requirements for flight arrangements. United Airlines, 6 NMB 180, 186, 1977 WL 25692 (1977). There are twenty-two classifications of employees, including Sky Caps. Id.

The NMB certified the International Association of Machinists and Aerospace Workers ("IAMAW" or "IAM") as the representative of the craft or class of Passenger Service Employee at United. United Airlines, Inc./Continental Airlines, Inc., 39 NMB 229, 237, 2011 WL 6284746 (2011). In accordance with the NMB's certifications, the IAMAW and the carrier executed the CBA, which remains in effect today. (#17-2).

United claims that Plaintiff is not a United employee and hence, cannot be a member of the IAMAW bargaining unit. However, since Plaintiff is of the opinion that he is an employee of United, this presents a representation dispute that would give rise to the exclusive jurisdiction of the NMB. Plaintiff, as a Sky Cap, was responsible for checking baggage for United's out-bound passengers as well as checking in United's out-bound passengers at curb-side check-in. Therefore, even if Plaintiff was an employee of United, the NMB has determined that Sky Caps would fall within the Passenger Service Employee craft or class, thus being within the jurisdiction of the NMB. United Airlines, 6 NMB 180, 185 n.1, 1977 WL 25692 (1977). Plaintiff has failed to meet his burden that subject matter jurisdiction exists for this Court to resolve his representation dispute. Therefore, this dispute falls outside of this Court's jurisdiction.

### B. Intentional Infliction of Emotional Distress

Plaintiff alleges an intentional infliction of emotional distress ("IIED") cause of action. A claim for IIED must establish three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual or proximate causation." Star v. Rabello, 97 Nev. 124, 125 (1981) (citations omitted).

#### i. Statutory Preemption

This Court and the Supreme Court of Nevada have held that the exclusive remedy for tort claims premised on discrimination are remedied under statute. Brinkman v. Harrah's Operating Co., Inc., 2008 U.S. Dist. LEXIS 123992, at *5 (D. Nev. Oct. 16, 2008) (citing Sands Regent v. Valgardson, 777 P.2d 898 (Nev. 1989)). Nevada Revised Statutes ("N.R.S.") § 613.330 et. seq. provides the exclusive remedy for tort claims premised on illegal employment practices:

> 1. Except as otherwise provided in NRS 613.350, it is an unlawful employment practice for an employer: (a) To fail or refuse to hire or to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin.

N.R.S. § 613.330(1)(a).

In Lund v. J.C. Penney Outlet, 911 F. Supp. 442 (D. Nev. 1996), the court granted summary judgment against the plaintiff's state tort claim which was premised upon discriminatory conduct covered by state or federal statutes with adequate remedies; furthermore stating that "where a plaintiff has a statutory remedy, [the court] would not create a new state tort remedy." Id., (citing D'Angelo v. Gardner, 107 Nev. 704 (1989)). The Lund Court explained that:

> [b]ecause the rationale behind Nevada's public policy against employment discrimination on the basis of age must be nearly identical to the rationale supporting any similar state policy against employment discrimination on the basis of disability, and because Plaintiff has a federal statutory remedy, it is almost impossible to believe that the Nevada Supreme Court would permit Plaintiff to pursue her public policy discharge claim under state law.

Id. at 445.

Here, the Plaintiff's IIED claim is premised on the same allegations that he relies on to support his claims for discrimination and retaliation. (#1 at 62-68). Because Plaintiff has an adequate statutory remedy for the alleged discrimination and retaliation, this Court will not address those allegations. Thus, the allegations supporting those claims cannot be the basis for a separate, analogous IIED claim. Lund, 911 F. Supp. at 445.

### ii. IIED Elements Properly Alleged

In Plaintiff's fourth cause of action for IIED, he makes the conclusory allegation that "[d]efendants' actions and conduct as set forth herein were extreme and outrageous so as to go beyond all possible bounds of decency in a civilized community." (#1 at 90).

The Nevada Supreme Court has defined "extreme and outrageous conduct" as conduct that is "outside all possible bounds of decency" and is regarded as "utterly intolerable in a civilized community." Maduike v. Agency Rent-A-Car, 114 Nev. 1, 4 (1998). The Ninth Circuit has similarly explained that "[l]iability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" Candelore v. Clark County Sanitation Dist., 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) or Torts, ¶ 46 cmt. d (1965)). In the

employment context, this Court recognized, "termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress theory." Hirschhorn v. Sizzler Rest. Int'l, Inc., 913 F. Supp. 1393, 1401 (D. Nev. 1995).

United, relies on Welder v. Univ. of Southern Nevada, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011), where the court reasoned that personnel management activity such as "hiring, firing, project assignments, promotion and demotions, performance evaluations and other similar acts" are insufficient to support a claim for IIED.

Plaintiff claims that he: (1) was accused of being intoxicated and instructed to go home; (2) was not provided a reasonable accommodation; (3) received a reduced work shift; (4) was subject to unspecified "disparaging comments" and "unprofessional bias;" (5) received disparate discipline; and (6) was terminated after refusing to sign an employee warning notice. Id. As in Welder, the Plaintiff has identified personnel management activity in support of his IIED claim. However, personnel management decisions are insufficient to support an IIED claim. Welder at 1245-46. Therefore, Plaintiff's claim for IIED fails to allege facts demonstrating extreme and outrageous conduct.

To sustain an IIED claim, a plaintiff must have suffered so severely "that no reasonable person could be expected to endure it." Alam v. Reno Hilton Corp., 819 F. Supp. 905, 911 (D. Nev. 1993). Moreover, when there is no physical impact, the court generally requires that the alleged emotional distress cause some physical injury or illness. Settlemyers v. Play LV Gaming Operations, 2011 WL 1042569 at *5 (D. Nev. Mar. 18, 2011) (citing Barmettler v. Reno Air, Inc., 114 Nev. 441, 956 P.2d 1382, 1387 (1998)).

Here, Plaintiff alleges he suffered "mental and emotional distress, anguish, pain and anxiety." (#1 at 90-91). As discussed above, there was no outrageous conduct, therefore "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress." Nelson v. City of Las Vegas, 99 Nev. 548, 555 (1983). Without more factual content, the

Plaintiff's allegation falls short of the necessary facts needed to plausibly allege severe emotional distress.

Thus, Plaintiff's claim for IIED is dismissed as a matter of law.

**V. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant United Airlines' Motion to Dismiss (#17) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant United Airlines, Inc. and against Plaintiff.

DATED this _5th_ day of July 2017

_____
Kent J. Dawson
United States District Judge